UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA- WESTERN DIVISION

| | |
|---|---|
| ALAN P. SOCOL, | ) CV 07-05022-SH |
| | ) |
| Plaintiff, | ) MEMORANDUM  DECISION |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

## I. PROCEEDINGS

This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's application for disability benefits.  Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned.  The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner.  The plaintiff and the defendant have filed

1  their pleadings, the defendant has filed the certified transcript of the record, and the

2  parties have filed a Joint Stipulation.  After reviewing the matter, the Court

3  concludes that the decision of the Commissioner is reversed and remanded for

4  further proceedings in accordance with the law.

5  II. BACKGROUND

6  On March 30, 2004, plaintiff Alan P. Socol ("plaintiff") filed an application

7  for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)

8  benefits under Titles II and XVI of the Social Security Act ("Act") alleging an

9  inability to work since April 1, 2002.  (Administrative Record ["AR"] 20).

10  Plaintiff claimed disability due to mental impairments, and was insured for DIB

11  through September 30, 2004.  (AR 68).  In order to extend disability insurance

12  benefits past the initial end-date, plaintiff must establish a disability onset date of

13  no later than September 30, 2004 for DIB, and on or prior to September 21, 2006

14  for SSI.[1]  (AR 20).

15  The Administrative Law Judge ("ALJ") conducted a hearing on May 24,

16  2006, following the Commissioner's initial denial of plaintiff's claim on December

17  16, 2004.  (Joint Stipulation ["Jt. Stip."] at 2 (citing AR 36-37, 172-96)).  On

18  September 21, 2006, the ALJ issued an unfavorable decision.  (Jt. Stip. at 2 (citing

19  AR 16-25)).  The ALJ found that plaintiff had severe mental impairments,[2] yet did

20  not have an impairment or combination of impairments that met, equaled, or

21  approached in severity any listing.  (AR 20).  Consequently, on November 2, 2006,

22  plaintiff requested that the Appeals Council review the decision, however, that

23  request was denied on July 12, 2007.  (Jt. Stip. at 2 (citing AR 4-7, 10)).  As a

24  result, plaintiff timely filed a Complaint with this Court.  (Jt. Stip. at 2).  For the

25

26  [1]    September 21, 2006 is the date of the ALJ's decision.

27  [2]    ALJ found plaintiff's impairments to include anxiety disorder, not otherwise specified

28  ("NOS") and depressive disorder, NOS.  (Jt. Stip. at 2 (citing AR 25)).

1  reasons discussed below, the Court finds that plaintiff's claim of error has merit on
2  the grounds that the ALJ committed legal error, and therefore the matter is
3  remanded for further proceedings.

4                          III.  <u>CONTENTIONS OF THE PARTIES</u>

5          Plaintiff argues that the ALJ did not properly evaluate plaintiff's mental
6  impairment.  (Jt. Stip. at 3).  Specifically, plaintiff asserts that the ALJ misread the
7  consultative examiner's report and relied on that faulty interpretation to support her
8  opinion.  (Jt. Stip. at 4).  Instead, plaintiff argues, medical evidence supports a
9  greater than "moderate" limitation that the ALJ assigned to daily activities, contact
10 with the public, and simple tasks.  <u>Id.</u>  Further, plaintiff claims that the ALJ
11 ignored significant testimony, namely, state agency medical findings, and third
12 party non-medical testimony that provided insight into how plaintiff's condition
13 affected his ability to work.  (Jt. Stip. at 7).  Plaintiff suggests that such error
14 warrants reversal.  <u>Id.</u>

15         Defendant takes the position that the ALJ properly considered the medical
16 record and provided substantial support for her conclusions.  (<u>See</u> Jt. Stip. at 11-
17 15).  Additionally, with respect to the alleged ignored testimony, defendant argues
18 that it is not necessary for the ALJ to discuss all of the evidence and that her failure
19 to provide reasons for rejecting certain third party witness testimony is harmless
20 error.  (Jt. Stip. at 15).  Thus, defendant requests that the court affirm the
21 Commissioner's decision.  (Jt. Stip. at 21).

22         The Court finds that the ALJ did not commit legal error in evaluating
23 medical testimony in the record, but that she did err by ignoring third party
24 testimony.  On this basis, the Court must reverse and remand for further
25 proceedings in accordance with the law.

26                               IV.  <u>DISCUSSION</u>

27         The ALJ's decision to deny benefits will be overturned "only if it is not
28 supported by substantial evidence or is based on legal error."  <u>Magallanes v.</u>

1    <u>Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989) (quoting <u>Green v. Heckler</u>, 803 F.2d

2    528, 529 (9th Cir. 1986)).  Substantial evidence means such relevant evidence as a

3    reasonable mind might accept as adequate to support a conclusion,[3] that is "more

4    than a mere scintilla, but less than a preponderance."  <u>Young v. Sullivan</u>, 911 F.2d

5    180, 183 (9th Cir. 1990).  Where the evidence is susceptible to more than one

6    rational interpretation, the ALJ's conclusion must be upheld.  <u>Andrews v. Shalala</u>,

7    53 F.3d 1035, 1039-40 (9th Cir. 1995).

8         With respect to plaintiff's contention that medical testimony was improperly

9    evaluated, the Court finds that the ALJ provided substantial evidence to support

10   her conclusion and that such evidence is susceptible to more than one rational

11   interpretation.  Therefore, her conclusion on this basis must be upheld.

12        The ALJ is responsible for determining credibility, resolving conflicts in

13   medical testimony, and for resolving ambiguities.  <u>Id.</u> at 1039.  "A physician's

14   opinion of disability 'premised to a large extent upon the claimant's own accounts

15   of his symptoms and limitations' may be disregarded where those complaints have

16   been 'properly discounted.'"  <u>Morgan v. Comm'r</u>, 169 F.3d 595, 602 (9th Cir.

17   1999) (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir. 1989)).  If there is

18   affirmative evidence showing that the claimant is malingering, the Commissioner's

19   reasons for rejecting the claimant's testimony need not be "clear and convincing."

20   <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th. Cir. 1996).

21        Here, the ALJ found legitimate evidence of malingering.  She considered the

22   Global Assessment Functionings ("GAF") assigned by consultative doctors

23   Gennady Musher, M.D., Ph.D., and Scott Kopoian, Ph.D. (60[4] and 55[5]

24   respectively) and their corresponding notes, and concluded that "moderate"

25   _____

26        [3]    <u>Id.</u>

27        [4]    (AR 125).

28        [5]    (AR 165).

- 4 -

limitations in social functioning and in concentration were appropriate.  (AR 24).

Though Dr. Kopoian assigned plaintiff a GAF of 55, he noted that it was likely that plaintiff's cognitive abilities far surpassed those associated with a GAF of 55 because plaintiff was not asserting "minimally capable effort" during the evaluation.  (AR 165).  In discussing plaintiff's mental status, Dr. Kopoian noted that plaintiff claimed not to know basic, overly learned information such as place of work and number of years of education.  (AR 161).  Further, Dr. Kopoian stated that plaintiff gave "grossly incorrect answers to extremely simple questions rarely answered incorrectly by the overwhelming majority of impaired individuals, including those with mild mental retardation and brain damage."  (AR 161-62).  Additionally, Dr. Kopoian found that plaintiff's score on the Rey-15 Memory Test "was suggestive of simulation of memory impairment."  (AR 164).

Likewise, Dr. Musher opined that plaintiff was not a reliable historian and as a result, gave plaintiff a limited diagnosis seemingly inconsistent with the GAF of 60 that he assigned.  (AR 23, 125).

Notably, plaintiff's designated treating physician, Dr. Bernard M. Bierman, assigned plaintiff a GAF of 30 and opined that plaintiff was disabled.  (See AR 22-23, 147-52).  However, if the treating physician's opinion is contradicted by another doctor, the ALJ may reject this opinion by providing specific, legitimate reasons, supported by substantial evidence in the record.  Lester, 81 F.3d at 830; see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  Here, the ALJ provided sufficient specific and legitimate reasons for relying on the non-treating physicians' testimony, including the fact that Dr. Bierman's opinion was largely based on plaintiff's subjective testimony, and because he had minimal contact with plaintiff.

Plaintiff visited Dr. Bierman twice, in May 2004 and in January 2006.  (AR 22-23).  "Generally, the longer a treating source has treated [the plaintiff] and the more times [plaintiff] has been seen by a treating source, the more weight . . . will

1   [be given] to the source's medical opinion."  20 C.F.R. § 404.1527(d)(2)(I).

2   Additionally, Dr. Bierman relied primarily on plaintiff's subjective testimony,

3   which was determined not to be entirely credible.[6]  (Jt. Stip. at 14; see also AR

4   114-17).  Where credibility is "properly discounted," medical testimony relying on

5   such credibility may be disregarded.  Morgan, 169 F.3d at 602 (9th Cir. 1999)

6   (citing Fair, 885 F.2d at 605).[7]

7          Therefore, based on the evidence in this instance, the ALJ did not err by

8   assigning a lower Residual Functional Capacity ("RFC") than the doctors' GAF

9   designations might have indicated.  Due to significant evidence of malingering,

10  clear and convincing evidence is not required to discredit plaintiff's subjective

11  testimony,[8] on which many of the medical reports are based.

12         However, though there is legitimate evidence of malingering, the ALJ failed

13  to properly address non-medical third party testimony.  Even if the third party

14  testimony relies on plaintiff's subjective testimony, the ALJ cannot properly

15  discredit lay testimony solely because plaintiff lacks credibility.  Dodrill v. Shalala,

16  12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ rejects lay witness testimony, the

17  ALJ must provide reasons germane to each witness whose testimony he rejects.

18  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (citing Dodrill, 12 F.3d at

19  919).  Where the ALJ fails to expressly discuss competent lay testimony favorable

20  to claimant, it is only harmless error if the reviewing court can confidently

21  conclude that no reasonable ALJ would have reached a different disability

22

23  _____

24       [6]      Plaintiff does not object to the ALJ's credibility finding.  (Jt. Stip. at 11 n.3, 15).

25       [7]      However, the Court does not consider plaintiff's ability to go to public libraries, do
    yoga, listen to music, and maintain friendships to be a factor in assessing plaintiff's credibility.  (AR
26  22).  "[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way
    detract from her credibility as to her overall disability.  One does not need to be utterly incapacitated
27  in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).

28       [8]      Lester, 81 F.3d at 834.

                                          - 6 -

1    determination when fully crediting the testimony.  Stout v. Comm'r, 454 F.3d

2    1050, 1056 (9th Cir. 2006).  The Court concludes that a reasonable ALJ could have

3    reached a different determination based on the omitted third party testimony, which

4    precludes said omission from constituting harmless error.  Id.

5         First, the ALJ erred by failing to discuss Charlie Richards' ("Richards")

6    testimony.  Richards was plaintiff's former boss and current friend.  In his detailed

7    assessment, Richards stated that he was forced to petition to have plaintiff let go

8    from his position at the Virgin Megastore when plaintiff thought he was being

9    deliberately poisoned by unseen "fumes" there.  (AR 109-10).  Richards found

10   plaintiff's behavior to be "a detriment to his tasks and to the rest of the staff."  (AR

11   109).  This testimony is consistent with the record.  Richards provides evidence of

12   plaintiff's chemical sensitivity, which plaintiff and doctors testify is a symptom of

13   his impairment.  (See, e.g., AR 100, 116, 150).  In her opinion, the ALJ makes no

14   mention of Richards' testimony and does not provide any reasons germane to the

15   witness for rejecting it.

16        Second, the ALJ erred by failing to take Richard K. Selby's ("Selby")

17   opinion into consideration as a third party non-medical source.  The ALJ did

18   properly note that Selby – a licensed marriage and family therapist[9] – does not

19   qualify as a medical source.[10]  However, Selby would certainly constitute a third

20   party non-medical source who had detailed insight about plaintiff's functionality.

21   For example, during plaintiff's hearing, Selby described plaintiff as being

22   ritualistic and explains plaintiff's patterns with which he became familiar.  (See AR

23

24        [9]    (AR 22, 181).

25        [10]    "'[A]cceptable medical sources' are: Licensed physicians (medical or osteopathic
26   doctors); [l]icensed or certified psychologists.  Included are school psychologists, or other licensed
     or certified individuals with other titles who perform the same function as a school psychologist in
27   a school setting, for purposes of establishing mental retardation learning disabilities, and borderline
     intellectual functioning only; [l]icensed optometrists . . . [l]icensed podiatrists . . . [q]ualified speech-
28   language pathologists . . . ."  Social Security Ruling 06-03p.

186).  Selby's testimony also provides insight into other people's perception of plaintiff.  Specifically, Selby testified that one time when plaintiff came to his home for a session, a neighbor was alarmed enough at the mere sight of plaintiff to call Selby to warn him that "this weird guy is coming up to your house."  (AR 182).  Though Selby's notes may not be given the weight of a medical source, they should not be discredited as having no value.  Indeed, "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore *cannot* be disregarded without comment.  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing Dodrill, 12 F.3d at 919).

To support the argument that the ALJ need not discuss all of the evidence, defendant cites Vincent v. Heckler.  (Jt. Stip. at 15).  However, this citation is misplaced.  In Vincent, the court found that the ALJ did not need to discuss lay testimony of a non-medical source who essentially gave an unsubstantiated medical opinion that plaintiff was mentally impaired due to a stroke.  Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).  Here, both Richards' and Selby's testimony provide substantial, specific information about plaintiff's impairment, and should be evaluated as competent evidence.

Additionally, defendant argues that the lay testimony here essentially re-states plaintiff's subjective testimony, and for that reason it can be discredited.  (Jt. Stip. at 15).  The Court does not agree.  The ALJ cannot discredit lay testimony that relies on plaintiff's subjective testimony on the basis that plaintiff lacks credibility.  Dodrill, 12 F.3d at 918-19.  Both Richards and Selby offer unique perspectives and original evidence regarding plaintiff's general state and functionality.

Finally, although the Ninth Circuit recently found in Rabadi v. Astrue that the ALJ's decision not to fully credit third party testimony of claimant's wife and

1   brother regarding his back pain was harmless error,[11] the case at issue here is

2   distinguishable.  In <u>Rabadi</u>, the nature of claimant's impairment bolstered the

3   court's decision.  Specifically, claimant's back impairment and pain were

4   contradicted by significant objective evidence in the record.[12]  Consequently, the

5   third party testimony was also undermined.  <u>See</u> <u>id.</u>  Here, a mental impairment is

6   at issue for which there will inevitably be less objective evidence.  <u>Cf.</u> <u>Benecke v.</u>

7   <u>Barnhart</u>, 379 F.3d 587, 594 (9th Cir. 2004) (finding that the ALJ erred by

8   effectively requiring objective evidence to establish the existence of fibromyalgia,

9   "a disease that eludes such measurement." (quoting <u>Green-Younger v. Barnhart,</u>

10  335 F.3d 99, 108 (2d Cir. 2003))).  Therefore, without significant objective

11  evidence to disprove its content, the third party testimony here should be discussed

12  and considered appropriately.

---

[11]   <u>Rabadi v. Astrue,</u> 2008 U.S. App. LEXIS 13492, 5-6 (9th Cir. 2008).

[12]   Objective medical evidence showed no muscle wasting, no use of assisted devices, and only occasional visits to a general practitioner.  <u>Id.</u>

1

## V.  ORDER

2        For the foregoing reasons, the decision of the Commissioner is reversed and

3  remanded pursuant to Sentence 4 of 42 U.S.C. § 405(g).

4  Date: <u>July 8, 2008</u>

5

6

7                       / s /

                   _____

8                 STEPHEN J. HILLMAN

9           UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28